IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD STROJNY and DR. JANA )        CIVIL NO. 11-00131 LEK-KSC
LEVIN-STROJNY,                )
                              )
        Plaintiffs,           )
                              )
    vs.                       )
                              )
PERMADRI, INC. and DOE        )
DEFENDANTS 1-20,              )
                              )
        Defendants.           )
_____  )
PERMADRI, INC.,               )
                              )
        Defendant and         )
        Third-Party           )
        Plaintiff,            )
                              )
    vs.                       )
                              )
JOSEPH M. SOLIS dba           )
YOUNGBLOOD MASONRY and        )
JOSEPH M. SOLIS dba           )
YOUNG BLOOD MASONRY,          )
                              )
        Third-Party           )
        Defendant.            )
_____  )

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 3 0 2012

at 7 o'clock and 51 min. P.M. Dfy
SUE BEITIA, CLERK

**ORDER DENYING: (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
(2) DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' CLAIMS FOR INTENTIONAL AND/OR FRAUDULENT
MISREPRESENTATION (COUNT II) AND NEGLIGENT MISREPRESENTATION
(COUNT III); (3) DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFFS' CLAIMS FOR BREACH OF EXPRESS
AND IMPLIED WARRANTIES (COUNT IV); AND
(4) PLAINTIFF'S COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are Defendant PermaDri, Inc.'s

("PermaDri") Motion for Summary Judgment ("Warranty Motion"),

Motion for Partial Summary Judgment on Plaintiffs' Claims for

Intentional and/or Fraudulent Misrepresentation (Count II) and Negligent Misrepresentation (Count III) ("Misrepresentation Motion"), and Motion for Partial Summary Judgment on Plaintiffs' Claims for Breach of Express and Implied Warranties (Count IV) ("Contract Motion"), all filed on March 7, 2012. [Dkt. nos. 35, 33, 31.] On August 14, 2012, Plaintiffs Richard Strojny and Dr. Jana Levin-Strojny ("the Strojnys") filed their memorandum in opposition to the Warranty Motion ("Warranty Opposition"), memorandum in opposition to the Misrepresentation Motion ("Misrepresentation Opposition"), and memorandum in opposition to the Contract Motion ("Contract Opposition"). [Dkt. nos. 81, 79, 77.] The Strojnys' Contract Opposition also includes a Counter-Motion for Partial Summary Judgment ("Counter-Motion"), seeking summary judgment as to Count IV. On August 21, 2012, PermaDri filed its reply in support of the Warranty Motion ("Warranty Reply"), reply in support of the Misrepresentation Motion ("Misrepresentation Reply"), and reply in support of the Contract Motion ("Contract Reply"). [Dkt. nos. 100, 104, 102.]

These matters came on for hearing on September 4, 2012. Appearing on behalf of PermaDri were Rebecca Copeland, Esq., and James McWhinnie, Esq., and appearing on behalf of the Strojnys was Leah Reyes, Esq. After careful consideration of the motions, supporting and opposing documents, and the arguments of counsel,

each of PermaDri's motions and the Strojnys' Counter-Motion are HEREBY DENIED for the reasons set forth below.

## BACKGROUND

The Strojnys filed the instant action on March 2, 2011, asserting diversity jurisdiction. [Complaint at ¶ 4.]  According to the Complaint, in November 2008, the Strojnys contracted with Third Party Defendant Joseph Solis ("Solis") of Youngblood Masonry ("Youngblood") to "build an integrated landscape around an existing, approximately three year old, in ground pool and spa at their residence in Kailua Kona, Hawai`i" ("the Project"). [Id. at ¶ 6.]  The Strojnys' pool and spa is made of fiberglass. [Id. at ¶ 14.]

The Complaint alleges that a PermaDri rubberized corrosion protection product ("Rubber Coat") was purchased for the Project in December 2008.  The Rubber Coat was applied in accordance with industry standards, the label's instructions, Rubber Coat's Material Safety Data Sheet ("MSDS"), and PermaDri's representations.  [Id. at ¶¶ 7-8, 13-14.]  The Rubber Coat, however, failed to cure as represented on its label and in its marketing materials.  Tom Brown, PermaDri's representative, informed Solis, *inter alia*, that the bubble formation in the coating was a known characteristic of the product.  The Strojnys state that this was never disclosed to either them or Solis and,

3

if they had known about this effect, they would not have purchased and used the product. [Id. at ¶¶ 18-19, 21.]

Brown instructed Solis to remove any uncured areas of the existing coating and reapply a new coat. Solis and Youngblood followed Brown's instructions regarding removal of the uncured portions and applied a new coat pursuant to the application instructions on the PermaDri website, the MSDS, the Rubber Coat label, and Brown's instructions. [Id. at ¶¶ 22, 24.] After the five-day curing period that Brown instructed Solis to follow, the same problems resulted. Solis spoke to Brown and another PermaDri employee, whose first name was also Tom. Brown informed Solis for the first time that the release of yellow oils into the water and Rubber Coat's change of color upon immersion were known characteristics of Rubber Coat. The Strojnys state that, if they had known about these effects, they would not have purchased and used Rubber Coat. [Id. at ¶¶ 26-28.]

On or about March 3, 2009, the Strojnys contacted PermaDri's Product Manager, Lawrence Penner, who apparently consulted with PermaDri's chemist, Graham Hagens. Hagens informed Penner and the Strojnys of similar problems with another swimming pool. He also informed the Strojnys, for the first time, that PermaDri had never tested Rubber Coat on fiberglass and Rubber Coat was not compatible with certain acrylic sealers. The Strojnys assert that PermaDri was aware from the outset that

4

they planned to use Rubber Coat on their fiberglass pool, and PermaDri was also aware that the Strojnys did in fact use Rubber Coat on their fiberglass pool. The Strojnys state that, if they had been informed that Rubber Coat had never been tested on fiberglass or that Rubber Coat may not be compatible with fiberglass, they never would have purchased and used the product. Further, PermaDri had never informed the Strojnys or Solis that Rubber Coat may not be suitable for use on fiberglass. The Strojnys state that other similar products specifically state whether or not they are suitable for use on fiberglass pools. The Strojnys allege that PermaDri knew or should have known that Rubber Coat was incompatible with fiberglass and should not have marketed it for use on all pools and below grade surfaces. [Id. at ¶¶ 30-31.]

Penner represented that the Strojnys' problems were unrelated to the Hawai`i climate, and both Penner and Hagens approved of the manner in which Youngblood applied the Rubber Coat. Penner and Hagens stated that they would research the Strojnys' problems with Rubber Coat. [Id. at ¶¶ 32-33.] On or about March 24, 2009, Hagens contacted the Strojnys and recommended mechanical removal of the Rubber Coat. Youngblood attempted to remove the Rubber Coat according to Hagen's instructions, but they could not remove all of the product. The Strojnys allege that the removal took months and that the removal

caused significant damage to the pool and spa. Further, during the removal process, the Strojnys discovered further damage from the application. [Id. at ¶¶ 35-41.] The Strojnys assert that the pool and spa systems and structure are unusable and must be replaced. [Id. at ¶ 47.]

The Strojnys assert the following claims: negligence and gross negligence ("Count I"); intentional and/or fraudulent misrepresentations ("Count II"); negligent misrepresentations ("Count III"); breach of express and implied warranties ("Count IV"); unfair and deceptive trade practices ("Count V"); products liability and strict products liability ("Count VI"); and a claim for punitive damages ("Count VII"). The Strojnys therefore seek: compensatory, statutory, and punitive damages; prejudgment post-judgment interest; attorneys' fees, expenses, and costs; and any other appropriate relief.

## I.  **Warranty Motion**

PermaDri states that, on or about December 15, 2008, PermaDri sold two five-gallon containers of Rubber Coat to Solis for $643.20. [PermaDri's Separate and Concise Statement of Facts in Supp. of Warranty Motion, filed 3/7/12 (dkt. no. 36) ("PermaDri's Warranty CSOF"), Exh. 1 (Decl. of Andrew Pressutti ("Pressutti Decl.")), Exh. A (invoice).] The product label on the containers of Rubber Coat that PermaDri sold to Solis contained the following Limited Warranty provision:

PermaDri, Inc. warrants to the first non-wholesale purchaser only that this product is free of defect in material at the time of shipment from PermaDri, Inc.'s factory. If PermaDri, Inc.'s product proves to contain manufacturing defects that substantially affect the products performance, PermaDri, Inc. will, at its option either [1] replace the PermaDri, Inc. product, or [2] refund the purchase price paid by the purchaser. No statement or claims by any PermaDri, Inc representative is part of, or can modify, this limited warranty. These remedies are the purchaser's only remedies. PermaDri, Inc. must be promptly notified in writing of any problem. In no event may notification be received by PermaDri, Inc. later than six months from the date of sale.

THE FOREGOING LIMITED WARRANTY IS THE ONLY WARRANTY EXTENDED BY PERMADRI, INC. THERE ARE NO OTHER WARRANTIES, AND THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

IN NO EVENT WILL PERMADRI, INC. BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES BASED ON BREACH OF WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY, OR ANY OTHER LEGAL THEORY. DAMAGES THAT PERMADRI, INC. WILL NOT BE RESPONSIBLE FOR INCLUDE, BUT ARE NOT LIMITED TO: LOSS OF PROFITS, LOSS OF SAVINGS OR REVENUE; LOSS OF USE OF THE PRODUCT OR ANY ASSOCIATED EQUIPMENT; DAMAGES TO STRUCTURES OR CONTENTS; COST OF CAPITOL; COST OF SUBSTITUTE EQUIPMENT, FACILITIES, OR SERVICES; COST OF DOWNTIME; CLAIMS OF THIRD PARTIES; AND INJURY TO PROPERTY. IN NO EVENT SHALL PERMADRI, INC.'S LIABILITY EXCEED THE PROVEN PURCHASE PRICE OF THE PERMADRI, INC. PRODUCT BOUGHT BY THE PURCHASER COVERED BY THIS LIMITED WARRANTY.

[Pressutti Decl., Exh. B (emphases in original); id. at ¶¶ 6-7

(stating that Exhibit B is the product label proof for five-

gallon containers of Rubber Coat and is identical to the product

labels affixed to the containers that PermaDri sold to Solis).]
The Strojnys do not dispute PermaDri's representation of the
provision's language.  [Strojnys' Separate and Concise Statement
of Facts in Opp. to PermaDri's Warranty CSOF, filed 8/14/12 (dkt.
no. 82) ("Strojnys' Warranty CSOF"), at 2.]

PermaDri argues that, even assuming *arguendo*, that the
Strojnys can prove that Rubber Coat contains manufacturing
defects which substantially affect the product's performance, the
Limited Warranty provision limits PermaDri's liability.  [Mem. in
Supp. of Warranty Motion at 4.]  PermaDri argues that, pursuant
to Hawai`i law, a seller can limit the buyer's remedies to repair
or refund and can exclude consequential damages, as long as the
exclusion is not unconscionable.  [Id. at 7 (citing Haw. Rev.
Stat. § 490:2-719; Earl M. Jorgensen Co. v. Mark Construction,
Inc., 56 Haw. 466, 474, 540 P.2d 978 (Haw. 1975)).]  PermaDri
contends that there was no one-sidedness, unfair surprise, or
disparity of bargaining power in this case because: Solis has
significant prior experience as a contractor, including doing
pool landscaping; Solis learned about Rubber Coat while
researching various waterproofing materials; Solis was free to
obtain any other waterproofing product; the Limited Warranty
provision is conspicuously positioned on the Rubber Coat label;
and, as a contractor, Solis would be expected to read the product
label of any product he intended to use.  [Id. at 8-9 (citing

Complaint at ¶¶ 6-7).] PermaDri therefore asserts that the Limited Warranty provision is not unconscionable.

PermaDri further asserts that the Limited Warranty provision applies by its plain, clear, and unambiguous language. The Limited Warranty provision: 1) limits the warranty to the "first non-wholesale purchaser", who in this case is Solis; 2) limits any remedy to either replacement of the Rubber Coat product or a refund of the purchase price; and 3) precludes all of the Strojnys' claims and the damages that allegedly arose therefrom. PermaDri therefore urges the Court to grant summary judgment to PermaDri as to all claims. [Id. at 9-10.]

## A.  **The Strojnys' Opposition**

In the Warranty Opposition, the Strojnys emphasize that "PermaDri represented both orally and in writing that Rubber Coat would be suitable for use by the Strojnys as a waterproof barrier between their landscaping hardscape and their in-ground fiberglass pool and spa." [Warranty Opp. at 1-2.] Further, they emphasize that they applied the Rubber Coat according to PermaDri's instructions and representations and, in purchasing the Rubber Coat, the Strojnys relied on "PermaDri's marketing and advertising materials, and other representations." [Id. at 2.]

The Strojnys argue that the Court must deny the Warranty Motion because the Limited Warranty provision is unreasonable and unconscionable under the Hawai`i Uniform

Commercial Code ("UCC"). [Id. at 4.] They contend that the Limited Warranty provision is unreasonable in light of PermaDri's repeated representations and because PermaDri never disclosed the Limited Warranty provision to the Strojnys before they bought the Rubber Coat. [Id. at 6.] Both Richard Strojny and Jana Strojny submitted declarations stating that they were unaware of the Limited Warranty provision until after they purchased the product. [Strojnys' Warranty CSOF, Decl. of Dr. Jana Levin-Strojny ("Jana Strojny Warranty Decl.") at ¶ 8, Decl. of Richard Strojny ("Richard Strojny Warranty Decl.") at ¶ 8.]

The Strojnys assert that, both before and after they purchased the Rubber Coat, PermaDri repeatedly represented that the product was suitable for the Strojnys' intended purpose. [Warranty Opp. at 7.] In particular, the Strojnys point to the following representations:

- "PermaDri's website states [Rubber Coat] 'is an environmentally friendly waterproofing product that can be applied indoors and outdoors with conventional protective equipment.'" [Strojnys' Warranty CSOF at 3 (citing Complaint, Exh. A).]

- "PermaDri's website states its products are suitable for 'below grade' application and 'provide a quick and easy solution for below grade waterproofing applications.'" [Id. (citing Complaint, Exh. A).]

- "PermaDri's website does not state any climate exceptions, except that cure time varies from 24-48 hours depending on relative humidity." [Id. (citing Complaint, Exh. A).]

- "PermaDri's website states Rubber Coat is simple to apply and appropriate for use in landscaping, pools, and decks." [Id. (citing Complaint, Exh. A).]

- "PermaDri's website does not differentiate between the types of pools for which PermaDri's products are suitable." [Id. (citing Complaint, Exh. A).]

- "PermaDri's website states their products 'make below-grade waterproofing jobs quick, easy, and long-lasting.'" [Id. (citing Complaint, Exh. A).]

- "PermaDri's website states: 'PermaDri's products are ideal for repairs and maintenance in the landscape industry. PermaDri coatings can be used for waterproofing on existing designs including: plant containers, concrete ponds, fountains, reservoirs, spillways, and other water features. Waterproofing ponds and other landscaping features has never been so easy. PermaDri coatings are simple to apply and create seamless, impenetrable waterproof barriers. PermaDri's coatings are ideal for water features because they will not deteriorate due to exposure [to] UV rays. PermaDri coatings contain no VOCs and therefore provide a waterproofing solution that is safe for plants, fish, and people.'" [Id. at 3-4 (alteration in Strojnys' Warranty CSOF) (citing Complaint, Exh. A).]

- "PermaDri's representations regarding the suitability of its products for use in landscaping are not limited by any particular geographic areas, rather the products are warranted to be appropriate 'in the landscape industry.'" [Id. at 4 (citing Complaint, Exh. A).]

- "The MSDS provided to the Strojnys by PermaDri touts [Rubber Coat's] suitability as 'an environmentally friendly waterproofing product' suitable for outdoors." Further, the MSDS does not state that Rubber Coat's use is limited to certain geographic areas. [Id. (citing Complaint, Exh. B).]

- The instructions on Rubber Coat's label state that the product is "appropriate for exterior waterproofing and below grade waterproofing." [Id. (citing Pressutti Decl., Exh. C).[1]]

The Strojnys argue that, in light of these representations, the

Limited Warranty provision is unreasonable. In the alternative,

---

[1] The Strojnys' Warranty CSOF cites to Exhibit A to the Pressutti Declaration, but the Warranty Opposition clarifies that the citation should be to Exhibit C. [Warranty Opp. at 9.]

the Strojnys argue that there is a genuine issue of material fact as to this issue. [Warranty Opp. at 9.]

The Strojnys argue that <u>Jorgensen</u> does not preclude a finding that the Limited Warranty provision is unconscionable because there was no meeting of the minds as to the Limited Warranty provision. PermaDri's representations were inconsistent with the terms of the Limited Warranty provision. Thus, PermaDri affirmatively misled the Strojnys. Further, the Strojnys argue that the Limited Warranty provision is unconscionable because they are homeowners and because PermaDri never disclosed the Limited Warranty provision to the Strojnys before the Strojnys bought the Rubber Coat. They contend that the failure to disclose the Limited Warranty provision prior to purchase renders the warranty invalid. [<u>Id.</u> at 9-12.]

The Strojnys also argue that they, not Solis, were the purchaser of the Rubber Coat. PermaDri therefore cannot rely on Solis' profession to support its position that the Limited Warranty provision is not unconscionable. The Strojnys state that they became aware of Rubber Coat through their research into waterproofing products and, based on PermaDri's representations, they directed Solis to purchase the Rubber Coat on their behalf. Solis did so, and the Strojnys provided the funds for the purchase. [Jana Strojny Warranty Decl. at ¶¶ 4-7, Exh. 1 (check dated 12/17/08 to Youngblood in the amount of $643.14 for the

product); Richard Strojny Warranty Decl. at ¶¶ 4-7.] At her deposition, Jana Strojny testified that Solis initially recommended the use of Rubber Coat after his research. The Strojnys considered the website, PermaDri's marketing materials, and Brown's representations, and the Strojnys made the final decision that the product was appropriate for the Project. [Strojnys' Warranty CSOF, Decl. of Rebecca A. Copeland ("Copeland Decl."), Exh. 2 (excerpts of 2/10/12 Jana Strojny depo. trans. ("Jana Strojny Warranty Depo.")) at 37-38.] Richard Strojny gave similar testimony at his deposition. [Copeland Decl., Exh. 3 (excerpts of 2/10/12 Richard Strojny depo. trans. ("Richard Strojny Warranty Depo.")) at 57-58.] The Strojnys argue that Solis purchased the Rubber Coat as their agent,[2] as is customary in a relationship between a contractor and a homeowner. The Strojnys therefore assert that the contractual relationship at issue in this case is between the Strojnys and PermaDri, and whether the Limited Warranty provision is unreasonable and/or unconscionable must be viewed in light of that relationship. [Warranty Opp. at 14 & nn.3-4.]

---

[2] For evidence of that the Strojnys hired Solis and Youngblood for the Project, see the Jana Strojny Warranty Declaration at ¶ 3, the Richard Strojny Warranty Declaration at ¶ 3, and the Jana Strojny Deposition at 21-22.

**B.** **PermaDri's Reply**

In the Warranty Reply, PermaDri argues that the Strojnys have failed to raise a genuine issue of material fact as to the Limited Warranty provision. Without conceding that there was any breach of any warranty, PermaDri argues that, even if there were breaches of warranties, the Limited Warranty provision "expressly and conspicuously disclaims all warranties except that the Rubber Coat 'is free of defect in material at the time of shipment from PermaDri, Inc.'s factory.'" [Warranty Reply at 1 (quoting Pressutti Decl., Exh. B).] Further, the Limited Warranty provision "expressly limits PermaDri's liability and available remedy for any 'special, incidental, or consequential damages' whether 'based on breach of warranty, breach of contract, negligence, strict liability, or any other legal theory' to the replacement of the Rubber Coat product purchased, or the purchase price." [Id. at 1-2 (quoting Pressutti Decl., Exh. B).]

PermaDri argues that the Limited Warranty provision is the type of exclusive remedy allowed under Haw. Rev. Stat. § 490:2-719, and the Strojnys do not challenge the Limited Warranty provision on the ground that the available remedies fail of their essential purpose. PermaDri therefore asserts that the Strojnys have waived that argument. PermaDri also argues that

limitation to an exclusive remedy is particularly appropriate where the risks are unknown or undeterminable. [Id. at 3-4.]

PermaDri reiterates that there was no one-sidedness of bargaining power because the Strojnys relied on Solis as their agent to purchase the Rubber Coat. PermaDri also argues that the Strojnys relied on Solis' experience and allowed Solis to handle all communications with PermaDri regarding the purchase of the Rubber Coat. [Id. at 4-5.] PermaDri argues that the Strojnys left the task of researching an appropriate product to Solis. [PermaDri's Suppl. Separate & Concise Statement of Facts in Supp. of Warranty Motion, filed 8/21/12 (dkt. no. 101) ("PermaDri's Suppl. Warranty CSOF"), Decl. of Leah M. Reyes ("Reyes Decl."), Exh. 2 (PermaDri's excerpts of 2/10/12 Richard Strojny depo. trans.) at 56-57, Exh. 3 (PermaDri's excerpts of 2/10/12 Jana Strojny depo. trans.) at 35.] Further, Richard Strojny acknowledged that he never had any discussions with PermaDri, let alone discussions prior to the purchase of the Rubber Coat. [Reyes Decl., Exh. 2 at 70.] PermaDri reiterates Solis had a meaningful choice of products. [Warranty Reply at 5.]

As to the Strojnys' argument that there was no meeting of the minds as to the Limited Warranty provision, PermaDri argues that the Limited Warranty provision "became a part of any implied contract as between the Strojnys and PermaDri by virtue of Plaintiffs' acceptance of the Rubber Coat product and failure

15

to seasonably reject" its terms. [Id. at 6.] PermaDri
emphasizes that the Strojnys do not deny that they read the
product label. [Id. at 13 (citing Richard Strojny Warranty Decl.
at ¶ 8; Jana Strojny Warranty Decl. at ¶ 8).] Further, the
Strojnys do not allege that they were mislead as to the meaning
of the Limited Warranty provision. PermaDri therefore argues
that the Limited Warranty provision became part of the sales
contract pursuant to Haw. Rev. Stat. § 490:2-207. [Id.]

Finally, PermaDri argues that the Strojnys have not
proven that any of PermaDri's representations about Rubber Coat
were false. Even if there were misrepresentations, the Limited
Warranty provision expressly excludes all other warranties and
provides that no statement or claim by a PermaDri representative
is a part of or modifies the Limited Warranty provision.
PermaDri argues that the Limited Warranty provision was
reasonable and there was no unfair surprise where the Strojnys
learned of the provision after purchase but before using the
product. Moreover, even if the portion of the Limited Warranty
provision disclaiming other warranties is invalid, the provision
is a valid limitation of any remedies to the return of the
purchase price. [Id. at 14-15.]

## II. **Misrepresentation Motion**

PermaDri seeks summary judgment as to Count II
(intentional/fraudulent misrepresentation) and Count III

16

(negligent misrepresentation) on the grounds that the Strojnys did not plead these claims with sufficient particularity and, even if the Strojnys sufficiently pled these claims, the Strojnys have not presented any credible and admissible evidence that they relied on any allegedly false statements by PermaDri.

PermaDri emphasizes that the allegedly false representations referred to in Count II were made after Solis had already applied the Rubber Coat. [Mem. in Supp. of Misrepresentation Motion at 7-8 (citing Complaint at ¶¶ 54, 60).] PermaDri urges the Court to grant summary judgment as to Count II because the Strojnys have not identified any credible and admissible evidence as to reliance, an essential element of their fraudulent/intentional misrepresentation claim. PermaDri makes the same arguments as to Count III because reliance is also an essential element of the Strojnys' negligent misrepresentation claim. [Id. at 8-9.]

A. **The Strojnys' Opposition**

In the Misrepresentation Opposition, the Strojnys argue that they sufficiently pled their misrepresentation claims. They assert that PermaDri improperly focuses on only one sentence in paragraphs 54 and 60 of the Complaint, ignoring all of the other allegations in the Complaint. The Strojnys assert that the Court must look at the Complaint as a whole to determine whether it satisfies Fed. R. Civ P. 9(b). [Misrepresentation Opp. at 6 &

17

n.1.] The Strojnys argue that, viewing the Complaint as a whole, there are sufficient descriptions of PermaDri's representations, both before and after the Strojnys purchased the Rubber Coat, to satisfy Rule 9(b) and to allow PermaDri to respond to the misrepresentation claims. [Id. at 10.]

As to PermaDri's reliance argument, the Strojnys again argue that it is improper for PermaDri to rely only on paragraphs 54 and 60. The Complaint alleges, and the Strojnys have proven, that they relied on PermaDri's representations and omissions in purchasing the Rubber Coat. The Strojnys therefore argue that PermaDri is not entitled to summary judgment on the merits of Count II and Count III. [Id. at 12-13.]

B.    **PermaDri's Reply**

In the Misrepresentation Reply, PermaDri argues that the Strojnys have not alleged which PermaDri representatives made representations to Solis while marketing the Rubber Coat or to the Strojnys after the Rubber Coat had been applied. Further, the Strojnys have not alleged the times and places where the PermaDri representatives made these alleged representations. The Strojnys merely make general references to marketing, marketing literature, marketing materials on PermaDri's website, and oral representations. [Misrepresentation Reply at 4-5.] PermaDri states that, in response to a request for production of "'[a]ny and all PermaDri Rubber Coat product information, data sheets,

marketing and/or manufacturer literature obtained by you prior [and subsequent] to Joseph Solis' and/or Youngblood Masonry's application of Rubber Coat at the subject property[,]'" the Strojnys merely provided printouts of certain pages of the PermaDri website, the MSDS, and the Rubber Coat product label. [Id. at 5.] The Strojnys have provided no information about the alleged oral representations, nor do the Strojnys state when they viewed the website contents upon which they allegedly relied. PermaDri notes that the dates on the printouts included with the Complaint are from years after the purchase of the Rubber Coat. [Id. at 5-6 (citing Complaint, Exh. A).] PermaDri therefore argues that Counts II and III fail as a matter of law because they are not sufficiently pled.

PermaDri notes that, in response to the Misrepresentation Motion, the Strojnys merely point to allegations in the Complaint. PermaDri argues that the Strojnys have offered no credible and admissible evidence to establish the required elements of either intentional misrepresentation or negligent misrepresentation. PermaDri therefore argues that neither Count II nor Count III can survive summary judgment. [Id. at 6-8.]

## III. **Contract Motion**

The Contract Motion alleges that Count IV (breach of express and implied warranties) fails because there is no

contractual relationship between the Strojnys and PermaDri, and the Limited Warranty provision specifically limits the warranties available to the buyer. [Mem. in Supp. of Contract Motion at 4.] As in the Warranty Motion, PermaDri emphasizes that it sold the Rubber Coat product to Solis, and he is the "first non-wholesale purchaser" who is the only person entitled to the remedies in the Limited Warranty provision. PermaDri reiterates that such a limitation of liability is permissible and is not unconscionable. [Id. at 7-8.] PermaDri therefore urges the Court to grant summary judgment to PermaDri as to Count IV.

## A.    The Strojnys' Opposition

In the Contract Opposition, the Strojnys assert that there was a contractual relationship between them and PermaDri because, as previously discussed, they hired Youngblood for the Project and they became aware of Rubber Coat in researching various waterproofing products. Based on PermaDri's representations that Rubber Coat was suitable for the Project, they provided the funds and directed Solis to purchase the Rubber Coat for them. Thus, Solis purchased the Rubber Coat as their agent and there was a contractual relationship between the Strojnys and PermaDri. In the alternative, the Strojnys argue that there is at least a genuine issue of material fact as to whether there was a contractual relationship between them and PermaDri. [Contract Opp. at 5-6.]

Even assuming, *arguendo*, that Solis was the purchaser of the Rubber Coat, the Strojnys contend that the express and implied warranties extend to them as third party beneficiaries. The Strojnys also argue that <u>Jorgensen</u> is inapplicable because that case dealt with a limitation on remedies. Further, the Strojnys also argue that the Limited Warranty provision is ineffective under the Hawai`i UCC. [<u>Id.</u> at 7-8.]

In the Counter-Motion, the Strojnys assert that:

> Because PermaDri warranted that Rubber Coat was suitable as an above and below grade waterproofing product for their fiberglass pool and spa, PermaDri is liable to the Strojnys for breach of express warranty. PermaDri is also liable to the Strojnys for breach of the implied warranties of merchantability and fitness for a particular purpose. The purported "limited warranty" affixed to the Rubber Coat label is ineffective to negate PermaDri's prior express and implied warranties.

[<u>Id.</u> at 8.]

The Strojnys point to their deposition testimony that, both before and after they purchased the Rubber Coat, PermaDri's personnel represented to them, in its marketing materials, and on its website, that the product was a suitable above and below grade waterproofing agent for their fiberglass pool and spa. [<u>Id.</u> at 10 (citing Strojnys' Contract CSOF, Decl. of Rebecca A. Copeland ("Copeland Contract Decl."), Exh. 2 (Jana Strojny depo.)

at 36-38, Exh. 3 (Richard Strojny depo.) at 57-58).[3]]   The
Strojnys assert that they relied on these representations in
purchasing and using the Rubber Coat and therefore the
representations became part of the basis of the bargain.  [Id. at
11.]   The Strojnys state that PermaDri had reason to know,
through communications with Youngblood and Solis prior to
purchase, that the Strojnys intended to use the Rubber Coat as an
above and below grade waterproofing agent for their fiberglass
pool and spa.  Further, Youngblood applied the Rubber Coat
according to PermaDri's representations.  [Id. (citing Copeland
Contract Decl., Exh. 2 (Jana Strojny depo.) at 36-38, Exh. 3
(Richard Strojny depo.) at 57-58).]

        The Strojnys state that Rubber Coat was not suitable
for the use for which it was represented and it failed to perform
according to PermaDri's representations.  They also allege that
it was defective, unfit for its stated purpose, and unsuitable
for use as an above and below grade waterproofing agent for a
fiberglass pool and spa.  [Id. (citing Copeland Contract Decl.,
Exh. 2 (Jana Strojny depo.) at 38, 40-48, 50, 73-75, Exh. 3
(Richard Strojny depo.) at 67-77, 88, 104, 106-07, 109; PermaDri
Chemical Resistance Chart[4]).]  The Strojnys assert that their

---

    [3] These exhibits are identical to the Jana Strojny Warranty
Deposition and the Richard Strojny Warranty Deposition.

    [4] This appears to refer to refer the Rubber Coat MSDS,
                                        (continued...)

pool and spa have been permanently damaged.  [Id. (citing

Strojnys' Expert Witness Disclosures, filed 2/6/12 (dkt. no. 27),

Exh. 1 (expert report dated 2/6/12 by James N. Reinhardt, AIA,

CSI, of Architectural Diagnostics Ltd.)).]

The Strojnys contend that the Limited Warranty

provision is ineffective because, as previously discussed, the

Strojnys were unaware of it until after they purchased the Rubber

Coat, and PermaDri made repeated representations that the Rubber

Coat was suitable for the purpose for which the Strojnys

purchased it.  They argue that, in light of these

representations, the Limited Warranty provision did not negate

the express and implied warranties that PermaDri provided because

it was unreasonable in light of PermaDri's repeated

representations that the product was suitable for the Strojnys'

intended purpose.  The Strojnys therefore urge the Court to deny

PermaDri's Contract Motion and to grant their Counter-Motion.

[Id. at 12-15.]

---

[4](...continued)
[Complaint, Exh. B,] which contains a chart titled "Performance
(Cured Membrane)".  One of the properties listed is "Chemical
resistence".  The MSDS states "Resistant to most inorganic
solutions.  Not recommended for gasoline or other petroleum
products.  Consult Chemical Resistance chart for further
information."  [Id. at 1.]  The Strojnys, however, have not
provided the separate Chemical Resistance chart.

**B.** **PermaDri's Reply**

In the Contract Reply, PermaDri emphasizes that, pursuant to Haw. Rev. Stat. § 490:2-316, express and implied warranties may be excluded or modified. Thus, to the extent that the Strojnys assert any express warranty under Haw. Rev. Stat. § 490:2-313, any implied warranty of merchantability under Haw. Rev. Stat. § 490:2-314, or any implied warranty of fitness for a particular purpose under Haw. Rev. Stat. § 490:2-315, the Limited Warranty provision excludes and/or modifies such warranty. PermaDri argues that Rubber Coat's label was conspicuous enough to call the buyer's attention to the fact that there were no implied warranties, and it was unreasonable for the buyer not to examine the product after delivery and before use. PermaDri also argues that, in determining whether a disclaimer of warranties is conspicuous depends, not on whether a reasonable buyer would have been surprised, but on the parties' sophistication and the circumstances of the negotiation and signing of the contract. [Contract Reply at 3-5.]

PermaDri emphasizes that there is no written documentation of the contract between PermaDri and Solis; there is only the invoice. PermaDri argues that application of the product after receipt of the product and awareness of the Limited Warranty provision on the label was reasonable and that there was no surprise. The Strojnys could have objected prior to

application, but they did not. Any other representations about the product were expressly disclaimed by the Limited Warranty provision. [Id. at 6.]

PermaDri argues that the language of the Limited Warranty provision meets the requirements of Haw. Rev. Stat. § 490:2-316(6) to exclude or limit the implied warranties of merchantability and/or fitness for a particular purpose. PermaDri emphasizes that the Strojnys do not deny that they read the label, nor have the Strojnys raised an issue regarding the conspicuousness of the Limited Warranty provision. Thus, the Limited Warranty provision effectively limits the warranty on the Rubber Coat. PermaDri therefore asserts that it is entitled to summary judgment on Count IV. [Id. at 7-8.]

PermaDri also argues that the Limited Warranty provision effectively limits the available remedies because it does not fail of its essential purpose and it is not unconscionable. PermaDri argues that the Strojnys have not argued that the limited remedies fail of their essential purpose, and thus the Strojnys have waived this issue. Even if they did not waive the issue, PermaDri reiterates that the limitation of remedies in this case was reasonable. PermaDri also reiterates that the Limited Warranty provision is not unconscionable because there was no one-sidedness of bargaining power, Solis had a

meaningful choice, the Limited Warranty provision was properly disclosed to the Strojnys, and they accepted it. [Id. at 9-13.]

As to the Counter-Motion, PermaDri argues that the Strojnys have not shown that the Rubber Coat was unreasonably dangerous or that there was a causal connection between the alleged defect and the Strojnys' damages. Further, the Strojnys have not proven that PermaDri made a factual affirmation that became part of the basis of the bargain and that Rubber Coat failed to perform according to that statement. [Id. at 14.] PermaDri also contends that the Strojnys' own actions and lack of mitigation damaged their pool, spa, and landscaping. [Id. at 14-15 & n.3 (citing PermaDri's Motion for Partial Summary Judgment as to Pltfs.' Claim for Damages, filed 8/15/12 (dkt. no. 88)).] PermaDri argues that the Counter-Motion fails as a matter of law because the Strojnys have only offered their own self-serving statements alleging breach and/or defects. [Id. at 15.]

## DISCUSSION

The Strojnys have asserted diversity jurisdiction in the instant case. [Complaint at ¶ 4.] "Federal courts sitting in diversity apply state substantive law and federal procedural law." Estate of Rogers v. Am. Reliable Ins. Co., Civil No. 10-00482 SOM/RLP, 2011 WL 2693355, at *3 (D. Hawai`i July 8, 2011) (citing Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court

26

sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." (quotations omitted))).

Article 2 of the Hawai`i UCC "applies to transactions in goods[.]" Haw. Rev. Stat. § 490:2-102. "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." Haw. Rev. Stat. § 490:2-105(1). The containers of Rubber Coat at issue in this case constitute goods, and the parties agree that Article 2 of the Hawai`i UCC applies.

The crux of PermaDri's motions is that the Limited Warranty provision precludes all of the Strojnys' claims. PermaDri argues that the Limited Warranty provision: limits the remedies to the "first non-wholesale purchaser" - who PermaDri contends is Solis; disclaims all other warranties, including any statements or claims by PermaDri representatives; and limits the available warranties to replacement of the product or refund of the purchase price. The Strojnys respond, *inter alia*, that: Solis purchased the Rubber Coat as their agent and therefore the contractual relationship is between the Strojnys and PermaDri; the Limited Warranty provision is not part of the their agreement

27

because PermaDri failed to disclose it prior to purchase; and the Limited Warranty provision is invalid because it is unconscionable and/or unreasonable.

## I.   **The Purchaser of the Rubber Coat**

The general definitions of the Hawai`i UCC define a "purchaser" as "a person that takes by purchase." Haw. Rev. Stat. § 490:1-201. The Hawai`i UCC, however, also recognizes that the role of a "representative", which is defined as "a person empowered to act for another, including an agent, an officer of a corporation or association, and a trustee, executor, or administrator of an estate." Id. Article 2 also recognizes that a purchaser can act through a representative. See, e.g., Haw. Rev. Stat. § 490:2-705, cmt. 2 ("'Receipt by the buyer' includes receipt by the buyer's designated representative, the sub-purchaser, when shipment is made direct to him and the buyer himself never receives the goods.").

The Strojnys have presented evidence that they hired Solis and Youngblood to perform the Project for them. They directed Solis to purchase the Rubber Coat on their behalf, they provided the funds for the purchase, and Solis was acting on their behalf when he purchased the Rubber Coat. [Jana Strojny Warranty Depo. at 21; Jana Strojny Warranty Decl. at ¶¶ 3, 5-7; Richard Strojny Warranty Decl. at ¶¶ 3, 5-7.] This Court therefore finds that Solis was acting as the Strojnys'

representative in the purchase of the Rubber Coat and therefore the Strojnys ultimately were the purchaser. To the extent that PermaDri's Contract Motion seeks a ruling that only Solis is entitled to the warranties available to the purchaser of the Rubber Coat, the Court DENIES the Contract Motion.

The Court, however, does not agree with the Strojnys' position that, because they were the purchasers of the Rubber Coat, the Court may only look to their knowledge, experience, and reasonable expectations in the interpretation of the parties' agreement. Richard Strojny's deposition testimony establishes that, although the Strojnys followed up with their own research, they asked Solis to research possible products, Solis recommended Rubber Coat to them, and they relied in part on their conversation with him.

> Q.   And can you tell me about that conversation, what he told you about the product, and what you discussed?
> A.   He mentioned that he found this product. He researched it on line, and that he talked to the representatives of Permadri. He repeated - gave us a synopsis of the manufacturer's data sheets, and what it was purported to do, and the results of his conversation with the consumer sales rep. And we talked about its - how its properties would be suited for its application. As we requested that, you know, being an engineer, go research it yourself, and tell me what you think - independent.
> Q.   And so did you go ahead and do that and research it yourself?
> A.   Well, I didn't talk to the representative, but I did go online and looked at all the specs on it.
> .  .  .  .

> Q.　Okay.　And then so - then after you'd done
> your research and you feel comfortable using the
> product, do you then go back to Mr. Solis and tell
> him, "Yeah, okay, go ahead and use the Permadri"?
> A.　Yes, correct.

[Richard Strojny Warranty Depo. at 58.]

> Q.　Okay.　So when Mr. Solis first suggested it,
> he suggested that rubber coat would be able to be
> used for that purpose?
> A.　Yes.
> Q.　And did you rely solely - in your decision to
> select rubber coat, did you rely solely on your
> conversations with Mr. Solis?
> A.　No.　We went to the manufacturer's website
> and the data sheets that they had, and what they
> were advertising and, you know, links to the
> different kinds of projects.　Even though it
> wasn't the exact project, nothing is exact.　They
> were similar enough that you certainly saw
> pictures and the blending of different materials.
> And they advertised that they would work on
> different materials.

[Id. at 118.]

The Strojnys made the ultimate decision to purchase the
Rubber Coat but, in doing so, they considered Solis's research
and recommendation.　Further, although Jana Strojny was present
for the application, it was Solis who applied the Rubber Coat to
the pool and landscaping.　[Jana Strojny Warranty Depo. at 38.]
This Court therefore concludes that Solis's knowledge,
experience, and reasonable expectations are relevant to the
interpretation of the agreement.

30

## II. Whether the Limited Warranty Provision Was Part of the Agreement

In the instant motions, PermaDri does not appear to contest the Strojnys' assertion that PermaDri did not disclose the Limited Warranty provision prior to the Strojnys' purchase of the Rubber Coat. Further, on a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (quotation marks and brackets omitted). This Court therefore assumes, for purposes of the instant motions, that PermaDri did not disclose the Limited Warranty provision to the Strojnys prior to their purchase. The Court, however, finds that there are genuine issues of material fact as to what representations were made to the Strojnys, particularly prior to their purchase of the Rubber Coat. See Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); see also infra section III.B. (discussing the evidence of the representations that were made).

The Strojnys do not dispute that the Limited Warranty provision was displayed on the label of the Rubber Coat containers that they purchased. Based on PermaDri's exhibits depicting the Rubber Coat label, [Pressutti Decl., Exhs. B, C,]

31

the Court finds that the Limited Warranty provision is conspicuous, as that term is defined in the Hawai`i UCC. <u>See</u> § 490:1-201;[5] <u>see also</u> Haw. Rev. Stat. § 490:2-316(2). This, however, does not end the Court's inquiry.

Whether the Limited Warranty provision became part of the parties' agreement is governed by Haw. Rev. Stat. § 490:2-207, which states:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

---

[5] Section 490:1-201 states, in pertinent part:

> "Conspicuous", with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (1) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> >
> > (2) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

    (a) The offer expressly limits acceptance to the terms of the offer;

    (b) They materially alter it; or

    (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

The Official Comments to § 490:2-207, and the other provisions of the Hawai`i UCC, are the comments prepared by the American Law Institute ("ALI") and the National Conference of Commissioners on Uniform State Laws ("NCCUSL"). The Official Comments to § 490:2-207 state, in pertinent part:

3. Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). **If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party.** If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time.

4. **Examples of typical clauses which would normally "materially alter" the contract** and so result in surprise or hardship if incorporated without express awareness by the other party are:

> **a clause negating such standard warranties as that
> of merchantability or fitness for a particular
> purpose in circumstances in which either warranty
> normally attaches;** a clause requiring a guaranty
> of 90% or 100% deliveries in a case such as a
> contract by cannery, where the usage of the trade
> allows greater quantity leeways; a clause
> reserving to the seller the power to cancel upon
> the buyer's failure to meet any invoice when due;
> a clause requiring that complaints be made in a
> time materially shorter than customary or
> reasonable.

(Emphases added.)  These comments are highly persuasive because

the provisions of the Hawai`i UCC are modeled after the ALI and

NCCUSL's UCC, <u>see</u> <u>Torres v. Nw. Eng'g Co.</u>, 86 Hawai`i 383, 390

n.3, 949 P.2d 1004, 1011 n.3 (Ct. App. 1997), and other courts

have also found the ALI and NCCUSL's Official Comments to be

persuasive.  <u>See, e.g.</u>, <u>McCarthy v. BMW Bank of N. Am.</u>, 509 F.3d

528, 530 n.3 (D.C. Cir. 2007) (citing <u>Goldstein v. Madison Nat.</u>

<u>Bank of Wash., D.C.</u>, 807 F.2d 1070, 1074 (D.C. Cir. 1986);

<u>Guardian Life Ins. Co. of Am. v. Weisman</u>, 223 F.3d 229, 231 (3d

Cir. 2000); <u>JOM, Inc. v. Adell Plastics, Inc.</u>, 193 F.3d 47, 57

n.6 (1st Cir. 1999) (per curiam)).

> Article 2 of the Hawai`i UCC defines a "merchant" as

> a person who deals in goods of the kind or
> otherwise by his occupation holds himself out as
> having knowledge or skill peculiar to the
> practices or goods involved in the transaction or
> to whom such knowledge or skill may be attributed
> by his employment of an agent or broker or other
> intermediary who by his occupation holds himself
> out as having such knowledge or skill.

Haw. Rev. Stat. § 490:2-104(1).  Under this definition, at the

34

time of the transaction at issue in this case, PermaDri was a merchant as to the Rubber Coat product, and the Strojnys were not merchants. Section 490:2-207(2), however, uses the phrase "between merchants", and that phrase "means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants." § 490:2-104(3). Based on the allegations in the Complaint about Solis, [Complaint at ¶ 6,] not all of which have been addressed in the evidence before the Court in the instant motions, Solis may have been a merchant as to the kind of goods at issue in this case. This Court has already ruled that Solis's knowledge and experience are relevant to the knowledge and expectations chargeable to the Strojnys in the transaction at issue. Thus, if Solis was a merchant as to the kind of goods at issue in this case, the sale and purchase of the Rubber Coat containers was a transaction between merchants.

Comment 4 to § 490:2-207 indicates that the Limited Warranty provision is the type of provision that would "materially alter" the parties' agreement. Pursuant to § 490:2-207(2)(b) and Comment 3 to § 490:2-207, if the transaction was between merchants and PermaDri did not disclose the Limited Warranty provision to the Strojnys prior to the transaction, the Limited Warranty provision would not become part of the agreement unless the Strojnys, or their agent Solis, expressly agreed to the Limited Warranty provision. There are genuine issues of

material fact as to these issues, and therefore neither party is entitled to judgment as a matter of law.  See Rule 56(a).  Based on the evidence currently before the Court, PermaDri is not entitled to a ruling that the Limited Warranty provision precludes the Strojnys' claims, nor are the Strojnys entitled to a ruling that the Limited Warranty provision is inapplicable or otherwise invalid.  Thus, insofar as PermaDri's Warranty Motion, PermaDri's Contract Motion, and the Strojnys' Counter-Motion all require a determination of the applicability of the Limited Warranty provision, those motions are DENIED.

In addition, in order to provide guidance to the parties in further motions for summary judgment,[6] the Court suggests that the parties address the Strojnys' argument that the Limited Warranty provision was unconscionable because, although PermaDri did not test Rubber Coat on fiberglass, it impliedly represented that PermaDri was suitable for use on fiberglass pools.  Haw. Rev. Stat. § 490:2-719 states:

> (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

---

[6] On August 15, 2012, PermaDri also filed the following motions: Motion for Partial Summary Judgment on Plaintiffs' Claims for Punitive Damages; Motion for Partial Summary Judgment on Plaintiffs' Health and Safety/Water Quality Claims; and Motion for Partial Summary Judgment on Plaintiffs' Claims for Damages. [Dkt. nos. 83, 85, 88.]  These motions are set for hearing on November 9, 2012.

(a) The agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Comment 1 to § 490:2-719 states:

Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.

However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable

clause because of circumstances fails in its
purpose or operates to deprive either party of the
substantial value of the bargain, it must give way
to the general remedy provisions of this Article.

Pursuant to § 490:2-719, PermaDri could limit Rubber Coat buyers'
remedies and could exclude consequential damages as long as the
provision was not unconscionable.

In <u>Earl M. Jorgensen Co. v. Mark Construction, Inc.</u>,
the Hawai`i Supreme Court stated:

> Comment 1 to HRS s 490:2-302 states the test
> applicable in determing [sic] unconscionability:
>
>> The basic test is whether, in the light
>> of the general commercial background and the
>> commercial needs of the particular trade or
>> case, the clauses involved are so one-sided
>> as to be unconscionable under the
>> circumstances existing at the time of the
>> making of the contract . . . The principle is
>> one of the prevention of oppression and
>> unfair surprise . . . and not of disturbance
>> of allocation of risks because of superior
>> bargaining power.

56 Haw. 466, 474, 540 P.2d 978, 984 (1975) (alterations in
<u>Jorgensen Co.</u>).  Hawai`i courts have also recognized that "[a]
contract is not unconscionable unless it involves 'an absence of
meaningful choice on the part of one of the parties together with
contract terms [that] are unreasonably favorable to the other
party.'" <u>Joaquin v. Joaquin</u>, 5 Haw. App. 435, 443-44, 698 P.2d
298, 304 (1985) (some alterations in <u>Joaquin</u>) (some citations
omitted) (quoting <u>City and County of Honolulu v. Midkiff</u>, 62 Haw.
411, 419, 616 P.2d 213, 218 (1980)).

Jana Strojny testified that, in a telephone conversation with Lawrence Penner, he admitted that PermaDri had not tested Rubber Coat on fiberglass. [Jana Strojny Warranty Depo. at 74.] She stated:

> And so I said to him, "Well, since you're advertising it for pools, and you're not differentiating what type of pool, or cautioning anyone, and you're advertising for both pools, which are often fiberglass, don't you think you should be testing it?" And that's when he then went out in their – he said, "I went out in the yard," sometime not too long after that, "and found a piece of fiberglass, and painted rubber coat on it," and that was how they determined it was safe for fiberglass . . . .

[Id.] In the Complaint, the Strojnys allege that "other products used for waterproofing purposes on pools specifically state whether or not such products are suitable for use on fiberglass pools." [Complaint at ¶ 31.]

If the Strojnys can establish, through a witness with knowledge of this particular trade, that sellers specifically state whether their product is suitable for fiberglass pools, arguably the failure to state that Rubber Coat had not been tested on fiberglass could be considered an unfair surprise that could render the Limited Warranty provision unconscionable. Although this Court has advised the parties to address this issue in the context of the motions set for hearing in November, this Court also emphasizes that nothing in this Order constitutes a

39

ruling on any issue related to fiberglass testing or suitability for use on fiberglass.

## III. **Misrepresentation Motion**

In addition to its arguments based upon the Limited Warranty provision, PermaDri argues that it is entitled to summary judgment on the Strojnys misrepresentation claims because the Strojnys did not plead those claims with particularity and they did not present any credible and admissible evidence to establish their prima facie case as to their misrepresentation claims. The Strojnys respond that: they sufficiently pled Count II (intentional/fraudulent misrepresentation) and Count III (negligent misrepresentation); and they have identified sufficient evidence in response to the Misrepresentation Motion to survive summary judgment.

### A. **Pleading Fraud-Based Claims**

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud. See <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In a pleading asserting a fraud-based claim, the plaintiff "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not

suffice." Shroyer v. New Cingular Wireless Servs., Inc., 622
F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice,
intent, knowledge, and other conditions of a person's mind may be
alleged generally." Fed. R. Civ. P. 9(b); see also Odom v.
Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc)
("[T]he state of mind - or scienter - of the defendants may be
alleged generally." (citation omitted)); Walling v. Beverly
Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule
9(b) "only requires the identification of the circumstances
constituting fraud so that the defendant can prepare an adequate
answer from the allegations" (citations omitted)).

First, the Court notes that negligent misrepresentation
is not a claim sounding in fraud, and therefore the Rule 9(b)
requirements do not apply. Smallwood v. NCsoft Corp., 730 F.
Supp. 2d 1213, 1231-32 (D. Hawai`i 2010). To the extent that the
Misrepresentation Motion seeks summary judgment as to Count III
on the grounds that it is insufficiently pled, the
Misrepresentation Motion is DENIED.

As to the Strojnys' intentional/fraudulent
misrepresentation claim in Count II, the Court notes that the
Complaint alleges that the Strojnys entered into their contract
with Solis in November 2008 and that they purchased the Rubber
Coat in December 2008. The Complaint alleges that Solis'
company, Youngblood, researched waterproofing materials and

became aware of Rubber Coat, and Solis recommended the product to the Strojnys.  The Complaint recounts various representations in the marketing literature, in the MSDS, and on Rubber Coat's website.  [Complaint at ¶¶ 6-13.]  Thus, the alleged pre-purchase representations occurred during some time between November and December 2008.  The Complaint also describes the alleged post-application representations that Brown made to Solis when Solis inquired about problems with the first application of the Rubber Coat and prior to the second application.  These occurred in mid-January 2009.  [Id. at ¶¶ 21-24.]  This Court CONCLUDES that the allegations supporting Count II satisfy the pleading requirements of Rule 9(b).  Thus, to the extent that the Misrepresentation Motion seeks summary judgment as to Count II on the grounds that it is insufficiently pled, the Misrepresentation Motion is DENIED.

###    B.    **Failure to Establish Prima Facie Case**

Under Hawai`i law, the elements of a fraudulent or intentional misrepresentation claim are: "(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance."  Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai`i 461, 482-83, 228 P.3d 341,

362-63 (Ct. App. 2010) (citing <u>Hawaii's Thousand Friends v.</u>
<u>Anderson</u>, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)).

The elements of a negligent misrepresentation claim
are: "'(1) false information [is] supplied as a result of the
failure to exercise reasonable care or competence in
communicating the information; (2) the person for whose benefit
the information is supplied suffered the loss; and (3) the
recipient relies upon the misrepresentation.'"   <u>Zanakis-Pico v.</u>
<u>Cutter Dodge, Inc.</u>, 98 Hawai`i 309, 321, 47 P.3d 1222, 1234
(2002) (quoting <u>Blair v. Ing</u>, 95 Hawai`i 247, 269, 21 P.3d 452,
474 (2001) (citing <u>Kohala Agriculture v. Deloitte & Touche</u>, 86
Hawai`i 301, 323, 949 P.2d 141, 163 (App. 1997); Restatement
(Second) of Torts § 552 (1977))).

Although PermaDri's Misrepresentation Motion focuses on
the Strojnys' failure to establish reliance, a required element
of both claims, the Court must first consider whether the
Strojnys have presented evidence of what the alleged
misrepresentations were.   The only evidentiary support cited in
the Strojnys' separate and concise statement of facts in
opposition to PermaDri's separate and concise statement of facts
in support of the Misrepresentation Motion ("Strojnys'
Misrepresentation CSOF") is the Complaint.   [Strojnys'
Misrepresentation CSOF, filed 8/14/12 (dkt. no. 80).]   A party
responding to a motion for summary judgment, however, cannot

43

merely rely on the allegations in the complaint; instead, the responding party "'must set forth specific facts showing that there is a genuine issue for trial.'" Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The allegations of the Strojnys' Complaint, while sufficient for pleading purposes, are not enough to survive summary judgment. Further, even if the Court considered the printouts from the PermaDri website that the Strojnys attached to the Complaint, the pages which do bear a print date state either December 30, 2010 or January 10, 2011, [Complaint, Exh. A,] and the MSDS does not bear a date [id., Exh. B]. The Strojnys must present evidence that these documents are accurate statements of the representations that PermaDri made to them prior to their purchase of the Rubber Coat in December 2008.

In response to the Warranty Motion, the Strojnys allege that, prior to their purchase of the product, PermaDri represented that Rubber Coat "was suitable as an above and below grade waterproofing product on their fiberglass pool and spa[.]" [Strojny Warranty CSOF at 2.] In support of this statement, they cite the Jana Strojny Warranty Declaration, the Richard Strojny Warranty Declaration, and portions of their deposition testimony. [Id.] The declarations, however, merely state that:

4. As part of [their] research into waterproofing products, [the Strojnys] became aware of PermaDri's Rubber Coat product.

5. Based on PermaDri's representations that Rubber Coat was suitable as an above and below grade waterproofing product on [their] fiberglass pool and spa, [the Strojnys] directed Mr. Solis to purchase the product on [their] behalf.

[Jana Strojny Warranty Decl. at ¶¶ 4-5; Richard Strojny Warranty Decl. at ¶¶ 4-5.] In her deposition, Jana Strojny stated that she and Richard Strojny personally looked at "the representations from Permadri, though Tom Brown, through their website, [and] their marketing materials" and ultimately made the decision to use the Rubber Coat. [Jana Strojny Warranty Depo. at 37.] Jana Strojny, however, also testified that it was Solis who learned about Rubber Coat by looking on a website and watching a video. Solis brought the product to their attention and told them that "he thought that the advertised characteristics would meet the needs for this project very well." [Id. at 37.] Richard Strojny also testified that Solis found the product through on-line research, and Solis talked to PermaDri representatives. Solis told the Strojnys about his conversations with the PermaDri sales representative during his research into the product. Richard Strojny admitted that he did not talk to the PermaDri representative himself before they decided to

purchase the Rubber Coat.[7]  [Richard Strojny Warranty Depo. at 57-58.]  Similarly, Jana Strojny apparently did not discuss the Rubber Coat with any PermaDri representative prior to the purchase.  She testified:

> Q.    Other than reviewing the website and the product information, or the manufacturer product information, did you discuss with any other contractors or people in the construction industry or waterproofing industry about the use of the Permadri rubber coat?
> A.    No.

[Jana Strojny Warranty Depo. at 38.]  Thus, the oral pre-purchase representations that PermaDri, through Brown, allegedly made about Rubber Coat were made to Solis.  The Strojnys have not provided any evidence, let alone testimony from Solis or Brown, of what those representations were.

In her deposition, Jana Strojny recounted Solis' conversation, or conversations, with Brown between the first and second application, and she testified that Solis followed Brown's instructions in the second application.  [Jana Strojny Warranty Depo. at 43.]  Solis informed Richard Strojny of his conversation with Brown regarding what happened during the first application, the rationale behind the second application, and what weather conditions were appropriate for the application of Rubber Coat.

---

[7] In fact, Richard Strojny never had any discussions with a PermaDri representative.  [Richard Strojny Warranty Depo. at 77; Reyes Decl., Exh. 2 (PermaDri's excerpts of 2/10/12 Richard Strojny depo. trans.) at 70.]

[Richard Strojny Warranty Depo. at 72-73.] Again, however, the Strojnys did not present any evidence from the parties to the actual conversation, or conversations. Jana Strojny did testify to a March 2009 telephone conversation that she had with Lawrence Penner in which he admitted that PermaDri had not tested Rubber Coat on fiberglass. [Id. at 73-74.] This conversation, however, took place after the purchase and after both applications of the Rubber Coat. Thus, while it is relevant to other claims, that statement in and of itself cannot support a misrepresentation claim because the Strojnys did not act in reliance on that statement.

Thus, the Strojnys' evidence as to what the alleged misrepresentations were is limited, at best. The Court, however, must view the evidence in the light most favorable to the Strojnys, and the Court finds that they have presented sufficient evidence to establish a genuine issue of material fact as to the issue whether PermaDri made misrepresentations about the Rubber Coat. Further, as previously noted, there are genuine issues of material fact as to the issue whether the Limited Warranty provision applied and superceded any other representations about the product.

PermaDri's Misrepresentation Motion focuses on the Strojnys' failure to establish reliance. PermaDri argues that it entitled to summary judgment as to Counts II and III because

reliance is a required element of both fraudulent/intentional representation and negligent misrepresentation. The Strojnys presented testimony that, when they decided to purchase the Rubber Coat, they relied upon PermaDri's representations to Solis, which they confirmed with their own follow-up research. They also provided testimony that they did not learn of the Limited Warranty provision until after they purchased the Rubber Coat. See *supra*. In addition, Richard Strojny testified that the second application of the Rubber Coat was over the first application, per the instructions and direction of PermaDri. [Richard Strojny Warranty Depo. at 70-72.] He also stated that he had concerns about whether they should go forward with the second application, and Solis responded that, based on PermaDri's representations, if the conditions were "perfect", a second coat would "encapsulate any issues with the first application." [Id. at 74.]

Viewing the evidence in the light most favorable to the Strojnys, the Court concludes that they have set forth sufficient evidence of reliance to survive summary judgment. The Strojnys purchased the Rubber Coat in reliance on PermaDri's representations, and they agreed to have Solis perform the second application of the Rubber Coat based on PermaDri's representations after the first application. The Strojnys also

presented testimony about the damage that the applications of the Rubber Coat allegedly caused. [_Id._ at 88, 104, 106-07, 109.]

In light of the foregoing, the Court cannot conclude, based on the evidence currently before the Court, that PermaDri is entitled judgment as a matter of law as to either Count II (intentional/fraudulent misrepresentation) or Count III (negligent misrepresentation). _See_ Rule 56(a). The Misrepresentation Motion is therefore DENIED.

## CONCLUSION

On the basis of the foregoing, PermaDri, Inc.'s Motion for Summary Judgment, Motion for Partial Summary Judgment on Plaintiffs' Claims for Intentional and/or Fraudulent Misrepresentation (Count II) and Negligent Misrepresentation (Count III), and Motion for Partial Summary Judgment on Plaintiffs' Claims for Breach of Express and Implied Warranties (Count IV), all filed March 7, 2012, as well as the Strojnys' Counter-Motion for Partial Summary Judgment, filed August 14, 2012 as part of their memorandum in opposition to the Contract Motion, are HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, SEPTEMBER 30, 2012.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RICHARD STROJNY, ET AL. V. PERMADRI, INC., ETC.; CIVIL NO.
11-00131 LEK-KSC; ORDER DENYING: (1) DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT; (2) DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFFS' CLAIMS FOR INTENTIONAL AND/OR FRAUDULENT
MISREPRESENTATION (COUNT II) AND NEGLIGENT MISREPRESENTATION
(COUNT III); (3) DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' CLAIMS FOR BREACH OF EXPRESS AND IMPLIED
WARRANTIES (COUNT IV); AND (4) PLAINTIFFS' COUNTER-MOTION FOR
PARTIAL SUMMARY JUDGMENT